GIDEON C. ANGLE v. ALBERT L. RUNYON, COMPTROLLER OF THE TREASURY OF THE STATE OF NEW JERSEY.

1. An act of the legislature having directed the treasurer of the state to pay a certain sum of money to A. for alleged military services. On application for *mandamus* to compel the comptroller to certify the claim for payment—*held*, that a return showing facts recited in the preamble to the act as grounds on which the gift was made to be untrue, and that the legislature was imposed upon in passing the act, is insufficient as an answer to the writ, and should be stricken out.

2. The comptroller cannot set up fraud in procuring the act, as grounds for withholding his official action requisite to obtain payment from the treasurer.

3. When payment of a specified sum to a designated person is directed to be made out of the treasury by an act of the legislature, the comptroller's duties, made necessary by law to facilitate payment, are ministerial merely.

On application for *mandamus* to compel the comptroller to audit and allow certain moneys claimed to be due relator from the State of New Jersey.

Argued at February Term, 1876, before Justices DEPUE, DIXON and KNAPP.

For the relator, *E. L. Campbell.*

For the comptroller, *Vanatta*, Attorney-General.

The opinion of the court was delivered by

KNAPP, J. At the last June Term of this court a rule was allowed, at the relation of Gideon C. Angle for an alternative *mandamus*, commanding Albert L. Runyon, comptroller of the treasury, to audit, adjust and allow to the relator certain moneys due him from the State of New Jersey, as named in, and provided by a certain act of the legislature, entitled "an act for the relief of Gideon C. Angle," approved March 10th, 1874, or show cause, before this court at the

Term of November then next, to the contrary.   A preamble to the act recites that, "Whereas, Gideon C. Angle, at the time a resident of Warren county, State of New Jersey, did, on the 12th day of September, 1861, enlist in the military service of the United States, from the State of New Jersey, for the term of three years; and whereas, after having so enlisted he was placed in a Pennsylvania regiment, to wit, the Eleventh Pennsylvania cavalry; and whereas, in consequence of being thus attached to a Pennsylvania regiment he was refused payment of the sum of six dollars per month for the relief of his family, to which he was entitled, under the laws of New Jersey, by reason of his enlistment from this state, and he has never been paid the same for his services from the date of said enlistment until January 1st, 1864, when he re-enlisted as a veteran.   Therefore, be it enacted," &c.

"That the treasurer of the state be, and he is hereby authorized and directed to pay to the said Gideon C. Angle, now a resident of the county of Hunterdon, the sum of one hundred and sixty-five dollars, with interest thereon from the said date of re-enlistment, (January 1st, 1864,) being the amount of pay due the said Angle from this state." A return was made to the writ, by the defendant, at said term, and the parties are now heard before the court on motion to strike out the return as containing no sufficient answer in avoidance of the mandate of the writ.

The comptroller, in showing cause against the command of the writ, draws attention by his return to the second section of the act "creating the office of comptroller of the treasury, and defining the duties thereof," in which it is enjoined upon him that he do not allow any claim, charge or amount against the state, unless *satisfied* that the same is justly due; and certifies that, in fact, he is not satisfied that the claim of the said Gideon C. Angle against the state is justly due.

He avers further in substance, that the facts recited in the preamble as the grounds on which this payment was ordered to be made by the legislative act, would not, if true, justly entitle the relator to the payment of the bounty awarded to

him; that the money distributed by the state for the families of those of the militia of the state called into service, was dispensed by a uniform rule, under the general provisions of the act for the relief of such persons, passed in 1861, and of the supplement of 1865, and by such rule was payable solely for the use of the wife, family or mother of each member of the militia mustered into the service of the United States, and credited to the quota of this state; that since the passage of the said act of 1861, the practice under said act has not been for the comptroller to allow, or the treasurer to pay, directly to the wives, families or mothers of such militia, the moneys provided to be paid by such act and the supplement, but such moneys were always paid to the board of chosen freeholders of the county in which such relatives resided; and that neither of the said last mentioned acts, nor any law of the state now does, or ever did, entitle any person of the militia of the state to receive for his own use, or to receive on behalf of his family, or wife, or mother, any of the moneys authorized or required to be paid to such families or relatives, but that such moneys are devoted to the separate and exclusive use and relief of such wife, mother or families; that the restrictive provisions of those acts are still binding upon him, not having been repealed by the act for relator's relief; the comptroller further certifies, that neither the said relator, nor his wife, mother or family ever was entitled to the payment of $6.00 a month, or to any other sum, by reason of any military service performed, or agreed to be performed by the relator; that the relator never enlisted in the State of New Jersey in the military service of this state or of the United States; nor was any enlistment of his ever credited to the quota of the State of New Jersey; that in point of fact, the relator enlisted in the State of Pennsylvania, and his enlistment was credited to the quota of that state.

The argument drawn from this return is, that because this claim, being for an unpaid bounty to the family of relator, and not in accordance with the provisions of any general law on the subject of bounties, in that payments to such families

were, under the general law, made only when the soldier was credited to the state quota, and then only paid through the freeholders of the county where such families resided, never to the family directly, and never to the soldier, and such provisions of the law not having been repealed by the act for the relief of the relator, the comptroller could not lawfully audit and allow this claim to the relator; secondly, that the recitals in the preamble to the act for the relief of the relator, being untrue, shows that the legislature was imposed upon, and thereby the passage of the act which conferred upon him this bounty was fraudulently procured, and is either void as an act of legislation, or at least justifies the comptroller in withholding his allowance of the claim, because thereby satisfied of its injustice as a claim against the state. The motion admits the truth of the return.

If the duty of the comptroller required or permitted him to pass upon the justice or fairness of the relator's claim to be paid this money, by reason of any military services performed, such as the state has heretofore legislated to pay bounty for, looking aside from the act for the "*relator's relief*," the judgment formed by him on the facts stated in his return, would be entirely just, and the only conclusion that could be reached by him as a faithful guardian of the public treasury. But, as the case stands, the return furnishes no legal obstacle to the demand of the relator to be paid.

While the legislature, in the preamble to the act for the relief of Angle, has recited, as grounds upon which it saw fit to bestow the state's bounty, circumstances substantially like those under which provision was made for families of volunteers by general law, yet the claim of Angle is not in any wise rested upon those general provisions, but is entirely founded upon the special act mentioned, and in that act payment is expressly directed to be made, not to his family, or to any person for them, but to him, and out of the treasury of the state.

If the act in which the gift to the relator is made, has the force of legislation, there would seem to be no way to avoid

its payment, or of relieving the comptroller from the duty of auditing it for payment.

The duty of the comptroller to audit and adjust claims against the state, and supervise their payment, relates to all claims against the state. The act creating the office directs that he shall examine, audit, adjust and settle all accounts and claims presented against the state, and certify the amount to the treasurer for payment. And it further directs that he shall draw all warrants on the treasurer, *for the payment of all moneys directed by law to be paid out of the treasury.* It is of no consequence in this case that the moneys paid out of the treasury under the act of 1861 and its supplement of 1865, went to the chosen freeholders of the several counties. The act under which relator claims provides a different mode for the payment of the money therein ordered, and payment must be made under each law according to its terms. Payment being directed by law to be made to Angle from the treasury, the comptroller is required to perform such duty to effectuate the payment as pertains to his office under the law.

The recitals in the preamble to the act in question, whether true or false, are in no way necessary to support the grant contained in the act, and whether true or false—so far, at least, as affects these proceedings—is a question into which this court has no right to enter. The provisions of the act are plain ; no resort need be had to the preamble to give it construction, or find in it "a key to open an understanding of the statute"—the sole office of a preamble. If false, it would not prove the legislature to have been imposed upon, and, if it did, fraud or misrepresentation is not sufficient to avoid the act of a legislative body, even if proved. *J. C. & B. R. R. Co.* v. *Hoboken R. R. Co.,* 5 *C. E. Green* 76, and cases. "Even an award cannot be set aside, when drawn in question collaterally, for misrepresentation or fraud in procuring it, but only in proceeding for the purpose of setting it aside." *Ibid.*

The power of the legislature to pass an act like this is not drawn in question, nor indeed could it be.

The power of the legislature to pass the act of 1861, above mentioned, and its supplement, giving a bounty to the families of soldiers who enlisted in the service of the United States from this state, and the large number of other acts empowering counties and townships to provide for bounties and extra pay to soldiers in the service, is unquestioned and unquestionable. If the legislature has power to devote the moneys of the state to such purposes, by general legislation, and under certain conditions, it has power to make specific gifts to individuals under the like or different conditions. It must be conceded that the legislature was unrestricted in its power to pass this act in question, and the propriety of its passage was a question solely for that body. Whether there is power in the courts to set aside and declare null an act of the legislature, on the ground of fraud in its procurement, by any direct proceeding to that end, it is not necessary in this case to consider; it is enough for this court to say, in this proceeding, that they have before them a gift created by an act of legislation which must be regarded as valid—an act not revoked, if revokable, by the legislature. The justice or propriety of the gift, if it be such, or reward, if it be deserved bounty, does not come properly within the consideration of this court. That question was determinable and determined by the legislature—the same power that created the office of comptroller and defined his duties.

Assuming the act of legislation, therefore, to be valid, can the comptroller, because he is not satisfied of the justice of the grounds upon which the act of legislation was rested, refuse to audit and adjust the claim to sign the warrant on the treasurer for the payment of the money? The comptroller is required, before entering upon the duties of his office, to take an oath that he will not allow any claim, charge, or account against the state, unless *satisfied* that the same is justly due. The comptroller is an auditing officer. He is placed in his position as agent of the state, to protect the treasury against demands not lawfully due and payable by the state. When a claim is presented he must ascertain

whether or not there is the authority of law for its payment, and allow it or not, as an examination shall show it entitled. If there is authority of law found by him for its payment, that should satisfy him.   If it is a claim that the state itself recognizes, as the salary declared to be payable to an officer, upon his being satisfied that the claimant is so in office; or if the state has referred a claim against it to the adjudication of any proper tribunal, and the tribunal has found in favor of the claim; or if the legislature has, by express enactment, directed that a certain sum shall be paid to a specified person, in these and like cases, in a great measure, his work is ministerial merely, and he must be satisfied that such claims are justly due.   *Kendall* v. *United States*, 12 *Peters* 524.   The power conferred upon him is not to supervise the action of the state, when, by its legislature, it has admitted and acknowledged a claim and ordered it to be paid.   Where a claim is not admitted by the state, he then stands in behalf of the state, and as its agent, to determine whether or not it is admissible, and justly and legally due; but when his principal, the state, whose officer he is, acknowledges a claim and directs it to be paid, then inasmuch as the state regulation for the payment of money requires him to draw warrants upon the treasury before such money can be paid, his duty is, without questioning, to conform to such direction.   Finding the law for its payment to exist, he must regard that as plenary evidence that it is justly due.   He cannot properly question the validity of an act of legislation directing the payment of money by the state, or disregard its authority, however fully he may be convinced that the money is bestowed upon an undeserving recipient.

The legislature in this case has left but little for the comptroller to do in adjusting the claim of the relator, and that of a ministerial character merely.

All that is required of him in auditing the claim, is to make correct computation of the lawful interest upon the principal sum of $165, ordered by the said act to be paid to the relator for the time specified therein, and to certify the

sum of principal and interest so found, as the amount of relator's claim, then with the draft of the warrant on the treasurer, and verifying the check for its payment, his duty and responsibility in the matter will be ended.

The further objection was made to the allowance of the writ of *mandamus*, that the act under which the relator claimed imposed no duty upon the comptroller in respect to this payment. It is true that the act does not, in express terms, direct the comptroller to allow this claim and draw his warrant for its payment. This was not necessary to impose that duty upon him. It is not necessary, nor is it usual in acts of the legislature directing the payment of money out of the public treasury, to order, in each case, that the warrant for the payment shall be signed by him. The general provision of law, which requires that all warrants shall be drawn by the comptroller upon the treasurer, for the payment of all moneys directed by law to be paid out of the treasury, sufficiently imposes that duty upon him.

The return of the respondent to the alternative *mandamus* fails to disclose any legal reason why the command of the writ should not be complied with, and must be quashed.

The comptroller is given ten days further time to make a new return, on failure so to do a peremptory *mandamus* should issue, requiring him to audit and adjust the claim by the computation of the legal interest upon that sum for the time mentioned, according to the directions of that act, and to draw his warrant upon the treasurer for the payment of such principal and interest.

No costs are allowed as against the respondent.